## M'CALEB ET AL. *vs.* M'CALEB.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

The Court of Probates is without jurisdiction in a suit for a partition, in which the defendant sets up title to the premises claimed to be divided, and the plaintiff alleges that the sale under which he claims is fraudulent and simulated.

In a suit for the annulment of a will and partition of the estate, where a supplemental petition is presented, alleging that part of the property of the estate has been sold to the defendant, as a disguised donation, and claiming to have it brought into the partition; this will be received and considered as an additional and component part of the original petition.

The Court of Probates has authority to decide on the character and validity of sales of land and slaves, when the question arises collaterally in the examination of other matters, in which it has jurisdiction.

So, where the natural son is alleged to have received donations *inter vivos* disguised in the form of sales, which is required by the legitimate heirs to be brought into partition, the Court of Probates has jurisdiction to inquire collaterally into the character of these sales, to ascertain if this property is to be included in the partition of the whole estate.

This is an action by the legal and forced heirs of the late Thomas Farrar M'Caleb, Esq., to annul his last will and testament, and to have the property of his estate partitioned among all the heirs, according to law.

Thomas F. M'Caleb died the 4th November, 1832, leaving an olographic will, written and dated the 16th July, 1827, in which he bequeathed to his natural son, Charles Eugenius M'Caleb, a minor, all his property, both real and personal, of which he should die possessed, or had title.

The testator, at his death, had a father and mother, eight brothers and sisters, or representatives of these last, living.

He appointed his father, David M'Caleb, of Claiborne county, and state of Mississippi, his executor, who accepted and qualified as such, under the will. The testator enjoined it on his relations, who under the law, might claim a portion of his estate, to renounce the same to his natural son. Theodore Howard M'Caleb, Esq., one of the brothers, renounced accordingly, in January, 1833. An inventory of the property of the deceased was taken, which amounted to thirty-two thousand nine hundred dollars.

In June, 1834, the present suit was instituted by the father, mother, and brothers and sisters, and the legal representatives of those deceased, with the exception of the brother who renounced, to annul the will and recover the property of the succession of the deceased, except one-fourth part thereof, which legally belonged to the natural son. They pray that the will be annulled, and the property, deducting the portion of the natural son, be partitioned among them.

The mother and natural tutrix of the natural son, pleaded a general denial; that the plaintiffs, by various acts and doings, have recognised the validity of the will, and can claim no rights under it, or any of the property belonging to the succession of the testator.

The plaintiffs filed a supplemental petition, in which they allege, the testator, in his lifetime, had made divers donations of property, which was included in the inventory, disguised in the form of sales to his natural son, as appeared by several notarial acts, which were specified. They pray that these dispositions be declared donations *inter vivos*, and brought into partition and divided with the other property of the succession.

The counsel for the defendant excepted to this petition, and averred that the Probate Court was without jurisdiction of the matter it contained. The exception was sustained by the court.

The parties went to trial on the original petition and answer.

The judge of probates, after hearing the testimony and the arguments of counsel on each side, decreed as follows:

1. That by the will of the deceased, Thomas F. M'Caleb, he bequeathed the whole of the property, he died possessed of, to the defendant, his natural son.

2. That it is in proof that the deceased had, at the time of his death, a father and mother, and eight brothers and sisters, living or represented; that, therefore, according to law, he could only dispose of one-fourth of his succession in favor of his natural child, (*Louisiana Code*, 1473,) but that by his disposing of the whole in favor of his natural son, his will was not thereby rendered null, but the disposition in favor of the defendant, is reducible to one-fourth of the whole succession. *Louisiana Code*, 1489.

3. That by means of said reduction, the father and mother of the deceased would have become, by operation of law, entitled to one-half of the remaining three-fourths of the succession, to wit: to three-eights thereof, and the eight brothers and sisters, to the other half of the said remaining three-fourths, or three-eights thereof. *Louisiana Code*, 899.

4. That David M'Caleb, the father of the deceased, who had been appointed by the will testamentary executor, having after homologation thereof, been sworn in said capacity, and having acted as such, thereby recognised the validity of said will, and waived the rights afforded him by the article 1491 of the *Louisiana Code*, of suing for the reduction of the donation made to the defendant, as regarded himself.

5. That with regard to the mother of the deceased, it being in proof that she and her husband live in the state of Mississippi, and that the common law prevails in that state, and it appearing that under the common law, (of which this court does not pretend to have the least knowledge,) the husband is vested with all the rights of his wife, the acquiescence of David M'Caleb, the father of the deceased, to the will, was also the acquiescence of his wife, the mother of the deceased.

6. That by act executed before G. R. Stringer, notary public, on the 18th of January, 1833, T. H. M'Caleb, one of

the brothers of the deceased, renounced all his rights, titles, interest and claim in and to the succession of the deceased.

7. That this succession, being a testamentary one, the shares of it renounced by David M'Caleb, the father of the deceased, as well for himself as for his wife, the mother of the deceased, and the share renounced by T. H. M'Caleb, the brother, devolved upon the defendant, as being the instituted heir. *Louisiana Code,* 1015.

From the principles laid down in the foregoing decision, the probate judge decreed the portions that each heir would be entitled to. From this decree the plaintiffs appealed.

*Strawbridge* and *Gray,* for the plaintiffs, maintained the jurisdiction of the Probate Court on the authority of adjudged cases in this court, strongly analogous to the present one. 5 *Martin, N. S.,* 214.    6 *Ibid.,* 304.

2. The property claimed in the supplemental petition is put in the inventory as property of the deceased, and the judge of the Probate Court must necessarily determine, whether it is to be taken into the account or estimate of the estate in decreeing a partition thereof. The court must, collaterally inquire into character of the sale and whether the property made part of the estate. If this were not done, the end would be conceded without the means. The rule is "*cum quid conceditur; conceditur et hoc per quod pervenitur ad illud.*" 6 *Martin, N. S.,* 304.

3. By the Roman law, the "man made his own heir"; by that of the customs adopted by the *Code Napoleon* and incorporated into the Louisiana Code, the *law* makes the heir, not the will of the testator. Institution of heirs are considered but as legacies made to legatees, and valid only as to the disposable portion. The heir of blood is seized by law. The instituted legatees or heirs are obliged to demand of them the delivery of their legacies. 5 *Toullier, No.* 117–18, *page* 116. *Chabot's Commentaires, tome* 2, *page* 13. *Code Napoleon, article* 511, 756. *Louisiana Code, article* 1003–4, 1599, 1600.

EASTERN DIST.
June, 1835.

M'CALEB ET AL.
vs.
M'CALEB.

4. As against the *natural son*, ascendants, brothers and sisters, have a legitime; consequently have the right to reduce the testamentary dispositions to the disposable portion. *Louisiana Code*, 1473–4, 1599–60.

5. The construction of article 1015 of the Louisiana Code, contended for, does not apply. The meaning is simply this : that in testamentary successions, where the heir or legatee renounces, his share does not go to *his heirs* according to the *Code Napoleon, article* 786, and the first part of article 1015, but to the legitimate heirs. This interpretation is confirmed by *articles* 1699, 1700–1–2, farther on in our code, which provide " that every part of the succession remaining undisposed of, &c., shall devolve upon the legitimate heirs." The adverse construction proves too much ; if there is no right of accretion at all, in testamentary dispositions like the present, how can the minor in this case take the portion renounced by the collateral heirs.

6. Admitting for a moment, the right of the wife of D. M'Caleb, was a chose in action, (they residing in a common law state) a voluntary assignment by the husband without consideration would not bind her ; and this at best, is but an implied *renunciation* of her right without cendiseration. *2 Kent's Commentaries*, 115.

*J. Slidell, contra.*

*Martin, J.,* delivered the opinion of the court.

This is an action to annul and set aside a will, and to recover the property of the *testator.* The late Thomas Farrar M'Caleb, died in November 1832, and in his will left all his property to his natural son. He appointed his father, who resided in the state of Mississippi, the executor of his last will and testament, earnestly requesting that he would carry his will into effect. Besides, his father, the mother and eight brothers and sisters, or descendants of these, were still living and residing in that state. His father took upon himself the administration of the estate. One of the brothers renounced his share in the succession.

The father and mother and all the the brothers and sisters, or their descendants, (except the brother that renounced,) are plaintiffs, and have instituted this suit against the natural son, assisted by his mother and natural tutrix, who are made defendants. The prayer of the petitioners is, that the will be annulled, and that the estate of the deceased, after deducting that portion of it which the law permitted the testator to bequeath to his natural son, may be delivered up and partitioned among the legitimate heirs, the plaintiffs in this suit.

The answer of the defendant avers, that the plaintiffs, by several acts they have done, have recognised and acknowledged the validity of the will, and have thereby deprived themselves of the faculty and power of contesting the defendant's right and claim to the property under it.

In a supplemental petition, the plaintiffs further alleged, that the testator had, in his lifetime, made donations of land and slaves to the defendant, disguised under the form of sales. They therefore pray that this property be also divided and partitioned out among them.

When this supplemental petition was presented, an exception or plea to the jurisdiction of the Court of Probates was put in and sustained.

The court proceeded to decide upon the original demand, as set forth by the plaintiffs, and decreed a partition of the estate, and directed that the defendant, as natural son, was entitled to one-fourth of the whole succession of his father, which was the disposable portion; that he is also entitled to three-eighths of the whole succession, for the shares renounced by the father and mother of the deceased, in consequence of the former having accepted the executorship; and to one-eighth of the three remaining eighths of the whole, for the share renounced by T. H. M'Caleb: that these rights or shares devolved on him as instituted heir. This basis made the defendant legal owner of forty-three sixty-fourths of the entire succession. From this decree, the plaintiffs appealed.

The first ground of complaint by the appellants, is made to the decision of the Court of Probates, sustaining the exception to its jurisdiction, in relation to the matters set forth in the supplemental petition. Had this petition been the only one, and the basis of the action, the case could not have been distinguished from that of *Reel* vs. *Knight*, 5 *Martin, N. S.*, 10, in which we held that the Court of Probates was without jurisdiction in a suit for a partition, in which the defendant set up a title in himself to the property in contest, and the plaintiff alleged that the sale to the former was simulated and fraudulent.

In this case the supplemental petition is, in the opinion of the court, to be taken and considered in conjunction with the original one, to which it is merely an addition and component part.

In this point of view, the present case has a much greater resemblance to that of *Baillo et al.* vs. *Wilson et al.*, 5 *Martin, N. S.*, 214, and *Gill* vs. *Phillips*, 6 *Ibid.*, 304, in which it was decided, that the Court of Probates had authority to decide on the character and validity of sales of land and slaves, which made part of an estate, when the question arises collaterally in the examination of other matters, of which the court had jurisdiction.

ı In these two last cases, the court of probates was called on, to test the validity of certain conveyances of part of the estate, in order to ascertain its amount, for the purpose of a correct partition; and this court was of opinion, that in order to exercise its ligitimate authority in the partition of the estate, avowedly distributable by this court, it became necessary, collaterally, to inquire into the character of these sales and conveyances, which comprise a part of the property forming the entire amount to be partaken. The Court of Probates could not know the amount of the whole estate without this; and its authority to go into this inquiry was conceded, although it would not possess this right, when every part of the property, the partition of which was sought, was denied to be a proper subject of partition by that

EASTERN DIST.
June, 1855.

M'CALEB ET AL.
vs.
M'CALEB.

The Court of Probates is without jurisdiction in a suit for a partition, in which the defendant sets up title to the premises claimed to be divided, and the plaintiff alleges that the sale under which he claims is fraudulent and simulated.

In a suit for the annulment of a will and partition of the estate, where a supplemental petition is presented, alleging that part of the property of the estate has been sold to the defendant as a disguised donation, and claiming to have it brought into the partition; this will be received and considered as an additional and component part of the original petition.

The Court of Probates has authority to decide on the character and validity of sales of land and slaves, when the question arises collaterally in the examination of other matters in which it has jurisdiction.

court, but which was claimed under a sale and purchase by the defendant.

It now becomes necessary to test the pretentions of the defendant, to the estate of which the testator died in possession, and in order to do this, we are required first to ascertain, whether the latter made any donation *inter vivos* to the former, and if he did, what was the value of the property thus bestowed on the natural son? The law renders him incapable of receiving more than one-fourth of his father's succession, when there are, as in this case, forced heirs still living. If, therefore, he has received by donation, *inter vivos*, property, the value of which exceeds one-fourth part of the aggregate value of the entire property of the donor at his death, and that of the donation included, he has then received all the law permitted, so that his pretensions to any part of the estate left by the testator at his decease, must be rejected. If it be shown that he has received less than one-fourth of the aggregate value, the plaintiffs must be restrained, and the defendant allowed the sum, which added to the value of the donations he has already received, will make one-fourth of the aggregate amount of the succession, including the donations made in the lifetime of the donor.

So, where the natural son is alleged to have received donations *inter vivos*, disguised in the form of sales, which is required by the legitimate heirs to be brought into partition, the Court of Probates has jurisdiction to inquire collaterally, into the character of these sales, to ascertain if this property is to be included in the partition of the whole estate. The Court of Probates cannot arrive at an essential and correct result, as it respects the amount of the estate to be divided, without testing the character of the conveyances in question, when one of the parties alleges them to be *feigned*, and the adverse party avers them to be *real* sales. The court must, therefore, exercise the authority, as it has the power, to examine into this matter. This is necessary to the exercise of its ligitimate jurisdiction. *Cum quid conceditur; conceditur et id per quod pervenitur ad illud.*

The Court of Probates, in our opinion, therefore, ought to have overruled the plea or exception to its jurisdiction. This error renders it necessary that the case should be remanded for the action of that tribunal, on the matter alleged in the supplemental petition.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled, avoided and reversed, the plea to the jurisdiction overruled, and the case remanded for further proceedings, according to law; the appellee paying the costs of this appeal.